IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Darrin Wheeler, #257719, ) | |
| ) | |
| ) | Civil Action No. 6:10-2854-JMC-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Amy Enloe and Benjamin Lewis, ) | |
| both sued in their individual capacity, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the motion for summary judgment (doc. 34) of defendants Amy Enloe and Benjamin Lewis. The plaintiff, a state prisoner proceeding *pro se*, filed his complaint seeking relief pursuant to Title 42, United States Code, Section 1983, alleging the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

The plaintiff filed his complaint on November 9, 2010, alleging that Nurse Practitioner Amy Enloe and Dr. Benjamin Lewis, both employees of the South Carolina Department of Corrections ("SCDC") at Perry Correctional Institution ("Perry"), failed to properly treat him for his gastrointestinal problems and charging that this was done intentionally to cause him "physical and mental anguish" (comp. p. 5). He claims that he was unable to keep down certain foods served to him at Perry and, as a result, he went "from 182 pounds down to 120 pounds within months" (comp. p. 4). On December 6, 2010,

he filed an amended complaint to include a claim of medical malpractice against the defendants. He has sued the defendants in their individual capacities and seeks compensatory and punitive damages.

The defendants answered on January 19, 2011, denying the allegations and listing various affirmative defenses, including Eleventh Amendment immunity. On March 14, 2011, the defendants moved for summary judgment, and filed with the court affidavits of both defendants and of Nadine Pridgen, the Director of Health Information Resources at SCDC. Attached to Pridgen's affidavit are the plaintiff's voluminous medical records tracing his care at SCDC since 1999.

By order dated March 14, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff thereafter responded in opposition to summary judgment on March 25, 2011. Filed with his motion were some of the same medical records submitted by the defendants and a statement[1] of inmate John Timothy Smith. The defendants filed a reply on March 29th, to which the plaintiff filed his own reply on April 11th.

## **FACTS PRESENTED**

According to his medical records, the plaintiff was transferred to Perry on February 19, 2008, following his incarceration at various SCDC facilities dating back to 1999. Throughout that period, and continuing after his arrival at Perry, he sought and/or received medical and mental health care from SCDC professionals, with 541 encounters documented in addition to near-daily medication sessions while at Perry (docs. 34-6 through 34-17). Many of these medical entries involve Perry medical staff's efforts to address the

---

[1] While this document is captioned as an affidavit, it is not notarized.

plaintiff's gastrointestinal problems, including his reported nausea and vomiting and treatment of his diagnosed gastroesophageal reflux disease ("GERD").

Nurse Enloe and Dr. Lewis both testify by way of affidavit to the continuous attention and care the plaintiff has received since arriving at Perry, including trips to an outside gastroenterologist, the provision of special diets and medications for his gastrointestinal complaints, and admissions to the Gilliam Psychiatric Hospital. According to Enloe, the plaintiff was sometimes noncompliant with his prescribed dietary and medical care, refusing to eat or take medications. She also testifies, and the medical records confirm, that his weight when he entered SCDC in 1999 was 125 pounds, and that since then he has been "fairly consistent between the 130 pound to 140 pound range," which was appropriate for his height and body type, as the plaintiff has a "very small frame." On December 30, 2010, more than a month after filing this action, the plaintiff weighed 133 pounds (Enloe aff. ¶ 29).

In his response to the summary judgment motion, the plaintiff does not challenge the medical records submitted by the defendants. Instead, he charges that the medication Dr. Lewis prescribed "is not working" and that Nurse Enloe denied him a diet of "Mighty Shakes" against the orders of Dr. Lewis. He also attaches the statement of fellow inmate John Timothy Smith, containing his observations of the plaintiff's condition. However, because this statement is not notarized, it cannot be considered as sworn testimony here.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

3

> there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

*Medical Indifference*

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services.  *Id.*  The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.  *Id.* at 104.  As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach.  *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto."  *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987).  A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."  *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted).  "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106.  Mere negligence or malpractice does not violate the Eighth Amendment.  *Id.*  Moreover, disagreements between an inmate and a physician over the

5

inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

While the plaintiff clearly had significant medical needs while at Perry, he cannot in good faith contend that either Nurse Enloe or Dr. Lewis was deliberately indifferent to them. As documented in the medical records and the defendants' affidavits, the Perry medical staff was keenly aware of the plaintiff's medical complaints and provided him thorough care on a near-daily basis. The records reveal the following:

(1) the plaintiff was given an initial medical assessment on March 23, 1999, soon after his arrival at SCDC;

(2) he received regular care and attention from 1999 through February 2008 when he arrived at Perry;

(3) while at Perry, he was regularly seen by both defendants, as well as other members of the Perry medical staff;

(4) in response to his gastrointestinal complaints, he was prescribed medications and received special diets;

(5) he was seen by an outside gastroenterologist twice; and

(6) he received mental health services.

(Docs. 34-6 through 34-17).

The court has carefully reviewed all of the submitted medical records, and notes the efforts of the defendants and other medical staff to care for the plaintiff's gastrointestinal problems. The court also notes various entries in the uncontradicted medical records in which the plaintiff is reported as noncompliant with the medical staff's efforts (*see,* for example, medical encounters 196, 244, 302, 336). One such example is documented in medical encounter 496, dated August 13, 2010 (*see* doc. 34-6 at p. 10), when the plaintiff refused to participate in lab work that had been ordered as a prerequisite to granting his request for a "Mighty Shakes" diet (*see also* Enloe aff. ¶ 22). Furthermore, according to Nurse Enloe's affidavit, she was informed on September 14, 2010, that the SCDC criteria for inmates to be placed on Mighty Shakes had changed, and the plaintiff no

longer met the height/weight ration.  Accordingly, she was unable to place him on Mighty Shakes (Enloe aff. ¶ 23).  Though he charges that Nurse Enloe denied him Mighty Shakes against the orders of Dr. Lewis, the medical records show that such was not the case.

In his response to the motion for summary judgment, the plaintiff does not contest the remainder of the medical records; he merely concludes that the medicines he received were ineffective.  While the plaintiff may be personally dissatisfied with the care he received while at Perry, he is not constitutionally entitled to the treatment of his choice.  The medical records, along with the detailed testimony of Nurse Enloe and Dr. Lewis, attest that the defendants were not indifferent to the plaintiff's serious medical needs.

The plaintiff further argues in his response that on July 31, 2010, he should have been taken to the hospital when he vomited and a small amount of blood was noted. As shown by the medical record attached by the plaintiff to his response, Dr. Lewis was contacted and prescribed medications for the plaintiff, including that the plaintiff be given an injection of Phenergan.  Dr. Lewis also ordered that medical personnel continue to monitor the plaintiff (doc. 39-1).  Again, though the plaintiff may disagree with the care provided on this occasion, this does not state deliberate indifference and fails to state a constitutional claim.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

### *Medical Malpractice*

The plaintiff attempts to bring a cause of action of medical malpractice against the defendants in his amended complaint.  However, even if these defendants' conduct rose to the level of negligence or medical malpractice, such claims are not actionable under Section 1983.  *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Accordingly, this cause of action fails.

7

***Qualified Immunity***

The defendants further argue they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff has failed to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

*Eleventh Amendment Immunity*

In any event, despite the plaintiff's captioned attempt to sue the defendants in their individual capacities, they are entitled to immunity under the Eleventh Amendment. While the Eleventh Amendment does not bar suits against government officials in their individual capacities, this principle is inapplicable here, as the only allegations levied against these defendants arise from their performance, or alleged lack thereof, in their respective official capacities as SCDC officials and employees. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and therefore is no different from a suit against the State itself."). The SCDC and Perry are state agencies or departments and are immune from monetary damages. *See Abebe v. S.C. Dept. of Corrections*, C.A. No. 0:09-3111-MBS, 2010 WL 3258595, at *3 (D.S.C. Aug. 16, 2010) (stating that SCDC is an agency of the state and, as such, is immune from suit in federal court for alleged deprivation of civil liberties). Accordingly, despite the plaintiff's procedural maneuver to pursue the defendants in their individual capacities, his claim fails, and they are immune from liability in their official capacities.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 34) be granted.

May 2, 2011                                             s/Kevin F. McDonald
Greenville, South Carolina                              United States Magistrate Judge